**AFFIDAVIT OF POSTAL INSPECTOR MICHAEL J. CONNELLY IN SUPPORT OF
AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, Michael J. Connelly, state:

### *INTRODUCTION AND AGENT BACKGROUND*

1.       I am an Inspector with the United States Postal Inspection Service (USPIS)
assigned to the Boston Division, in Boston, Massachusetts, having been so employed since 2007.
As a Postal Inspector, I am responsible for the investigation of federal criminal offenses.  I have
completed the USPIS Basic Inspector Training program in Potomac, Maryland; I am also a Task
Force Officer with the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force (JTTF)
and routinely work with agents, troopers, and officers with dozens of years of experience
investigating crimes involving organized criminal groups and terrorist organizations.  I have
received specialized training in the identification and investigation of suspicious and/or
hazardous items and substances sent through the United States Mail.  I have also attended
multiple trainings and courses dealing with electronic and cyber investigations as well as
investigations involving weapons of mass destruction (WMD) and terrorism threats.  I have
investigated and participated in the successful prosecution of other US Mail based threat cases
involving WMD "white-powder" hoax letters and threats with a cyber-nexus.

2.       I am currently investigating the mailing of envelopes containing white powder to
at least five different addresses in the last several weeks, in violation of 18 U.S.C. §§ 876(c)
(mailing threat to injure the person of another), and 1038 (false information and hoaxes,
punishing "[w]hoever engages in any conduct with intent to convey false or misleading
information under circumstances where such information may reasonably be believed and where
such information indicates that an activity has taken, is taking, or will take place that would

1

constitute a violation of chapter . . . 10 [biological weapons], 11B [chemical weapons], . . .").

3.      I submit this affidavit in support of an application for a criminal complaint charging Daniel Frisiello, born in 1993, and believed to be living at XX XXXXXX XXX., Beverly, Massachusetts, with five counts of violating 18 U.S.C. §§ 876(c) and five counts of violating 18 U.S.C. § 1038. I also submit this affidavit in support of a warrant for Frisiello's arrest on these charges.

4.      The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrant, and does not set forth all of my knowledge about this matter. All dates and times are approximate, and most of the information described herein is reported in sum and substance, and not verbatim. Addresses have been redacted to respect the various parties' privacy, including the defendant's. Finally, the threats are included verbatim to the best of my ability, and without correction to spelling, capitalization, or grammar.

### PROBABLE CAUSE TO BELIEVE THAT FEDERAL CRIMES WERE COMMITTED

5.      Within the past several weeks, at least five locations around the country have received an envelope that bears a Boston postmark on the outside and contains inside a suspicious white powder and a written message indicating or implying that the powder is dangerous or sent to cause the person danger.

6.      Federal law enforcement agencies have in the past investigated envelopes containing anthrax or harmful biological or chemical agents in white-powder form that were sent to persons with the seeming intent to scare them and cause them harm, because opening an

2

envelope that contains powder often results in the powder contacting the opener's skin or lungs (through inhalation), either of which could cause a serious infection, injury, or death. In other investigations, people have mailed envelopes containing an inert white powder, such as talcum powder or cornstarch, with the seeming intent to similarly scare the addressee or the opener of the envelope into thinking that the powder is anthrax or a harmful biological or chemical agent.

7.      The first envelope investigated in this case was addressed in handwriting to "DonalD trump Jr, XXXXXXXXXXXXX, New York City, NY" (Envelope 1). Donald Trump Jr. is the son of President Donald J. Trump, and this address belongs to a member of Donald Trump Jr.'s family. The envelope was postmarked in Boston, Massachusetts on February 7, 2018, and bore no return address. The addressee's wife opened the envelope. It contained paper bearing the following typewritten or computer-written text:

> You are an awful, awful person, I
> am surprised that your father lets
> you speak on TV. You make the
> family idiot, Eric, look smart. This is
> the reason why people hate you,
> so you are getting what you
> deserve. So shut the FUCK UP!

Envelope 1 also contained an unknown suspicious white powder, which spilled out of the envelope and onto the addressee's wife as she opened it. Out of concern that the powder was hazardous, local and federal law enforcement officers responded as if it were a hazardous material and the addressee's wife went to the hospital for examination. Envelope 1 and its contents are being examined to determine the powder's composition and for any other evidence identifying the sender.

8.      Although another person (not the defendant) claimed responsibility on the Facebook page of a Boston news station for sending Envelope 1, this was likely a false claim of

responsibility because the person claiming responsibility later recanted to investigators, and investigators independently confirmed that the person was actually working at a business located in the Minneapolis, Minnesota area during the period in which Envelope 1 was sent from Boston. Moreover, significant evidence described below gives probable cause to believe that Envelope 1 was instead sent by Frisiello.

9.     The second envelope being investigated was addressed in typewritten or computer-written script to "Nicola T. Hanna, United States Attorney's Office, Central District of California, XXX XXXXX XXXXX XX XXXXX XXXX, Los Angeles, CA 90012" (Envelope 2). Nicola T. Hanna is the Interim United States Attorney for the Central District of California and the address corresponds to his business address. Envelope 2 was postmarked in Boston, Massachusetts, also on February 7, 2018, and bore no return address. A courthouse mailroom employee opened the envelope. It contained paper bearing the following typewritten or computer-written text:

> That's for murdering Mark Salling! I
> Hope you end up the same place as Salling.

Mark Salling was an indicted defendant in a child pornography case prosecuted by the U.S. Attorney's Office for the Central District of California. On or around January 30, 2018, news media reported Salling's death, and by February 1, 2018, news media reported that his death had been ruled a suicide. In addition to the above message, which appears to blame Mark Salling's death on the U.S. Attorney's Office, Envelope 2 also contained an unknown suspicious white powder, which spilled out of the envelope when it was opened. Out of concern that the powder was hazardous, there was a hazardous material response. Envelope 2 and its contents are being examined to determine the powder's composition and for any other evidence identifying the

4

sender.

10.     The third envelope being investigated was addressed in typewritten or computer-written script to "Michele Dauber, Frederick I. Richman Professor of Law, Room XXXXX, XXXXXX XXXXXXX, Stanford Law School, XXXXXXXXXXX, Stanford, CA 94305" (Envelope 3).  Michele Dauber is a professor of law at Stanford University and the address listed above corresponds to her offices there.  Envelope 3 was postmarked in Boston, Massachusetts on February 7, 2018, and bore no return address.  Envelope 3 was opened by a co-worker of Professor Dauber on February 14, 2018.  The envelope contained paper bearing the following typewritten or computer-written text:

> Since you are going to disrobe
> Persky, I am going to treat you like
> "Emily Doe".  Let's see what kind of
> sentence I get for being a rich
> white male.

Professor Dauber is involved in the efforts to recall Judge Aaron Persky, the Santa Clara County judge who sentenced Brock Turner, a Stanford University athlete convicted of sexual assault, to six months' confinement despite the prosecution's recommendation of six years in prison. Professor Dauber represented the victim of Turner's assault, identified as "Emily Doe," in various discussions with Stanford University.  In addition to the above message, which appears to refer to Professor Dauber's work to recall Judge Persky, Envelope 3 also contained an unknown suspicious white powder, which spilled out of the envelope when it was opened.  Out of concern that the powder was hazardous, there was a hazardous material response by law enforcement officers. Envelope 3 and its contents are being examined to determine the powder's composition and for any other evidence identifying the sender.

5

11.     The fourth envelope being investigated was addressed in handwriting to "Deborah

Stabenow, XXXXXXXXX, E. Lansing, MI 48823" (Envelope 4).  Deborah Stabenow is a

United States Senator and the address listed above corresponds to her offices in East Lansing,

Michigan.  The envelope was postmarked in Boston, Massachusetts on February 12, 2018, and

bore no return address.  Envelope 4 was opened by an individual in Senator Stabenow's office on

February 15, 2018.  The letter contained paper bearing the following typewritten or computer-

written text:

> If you condone Margraves reaction
> to his daughter's testimony on Dr.
> Nassar, you are no better than he
> is.  You deserve what is coming to
> you like he is thinking you're a cunt
> version of a vigilante, do us a favor
> go suck a cock or better yet.

In context with news reports from around this period, this text appears to refer to reports that at

the sentencing hearing for Dr. Larry Nassar (the USA gymnastics doctor who pleaded guilty to

criminal sexual conduct in Michigan, and admitted to using his medical position to assault and

molest girls under the guise of medical treatment), Randy Margraves (the father of three

daughters who said they were assaulted by Nassar) tried to attack Nassar and was restrained by

court personnel, after which Senator Stabenow said that she wished that court security had been a

little slower in restraining Margraves.  In addition to the above paper, Envelope 4 also contained

an unknown suspicious white powder, which spilled out of the envelope when it was opened.

Out of concern that the powder was hazardous, there was a hazardous material response by local

and federal law enforcement officers.  Envelope 4 and its contents are being examined to

determine the powder's composition and to find any other evidence identifying the sender.

12.     The fifth envelope being investigated was addressed in typewritten or computer-

6

written script to "Antonio Sabato Jr., XXXXXXXX, Los Angeles, CA 90036" (Envelope 5).

Sabato is running for a federal congressional seat in California as a Republican. The address

corresponds to the address of a company that formerly did business with Sabato. Envelope 5

was postmarked in Boston, Massachusetts on February 12, 2018, and bore no return address.

The envelope contained paper bearing the following typewritten or computer-printed text:

> You're an awful awful person I am
> surprised that that olive skin
> mouth isn't orange. Since you think
> Obama is still a practicing Muslim
> that makes you a filthy kyke. Since
> kykes like you never change. You
> and McCain Jr belong together in
> hell, because that is where you're
> going not Christian heaven. You
> know what your party does with
> kykes.

In addition to this paper, Envelope 5 also contained an unknown suspicious white powder, which

spilled out of the envelope when it was opened. Out of concern that the powder was hazardous,

there was a hazardous material response by local and federal law enforcement officers.

Envelope 5 and its contents are being examined to determine the powder's composition and to

find any other evidence identifying the sender.

13.     Investigators have reviewed photos of each of the mailings detailed above and

have observed some commonalities:

a.     As mentioned, all of the envelopes were postmarked in Boston,

Massachusetts.

b.     All of the envelopes were stamped with the same type of stamp: a

square or rectangle bearing an American flag.

c.     None of the envelopes bore a return address.

7

d.      Three of the mailings appear to be red, greeting-card-style envelopes and the other two appear to be white, greeting-card-style envelopes.

e.      Three of the addresses on the outside of the envelopes appear to have been typed or printed onto a white piece of paper that was then affixed to the envelope with clear packing-style tape. The remaining two addresses were written directly on the outside of the envelopes. Regarding the handwritten names and addresses found on two of the mailings, a non-scientific, plain view examination of the envelopes leads me to believe that they were written by the same individual. This conclusion is based on my training and experience as a U.S. Postal Inspector, and the specific form and style of the individual letter characters found on both envelopes.

f.      All five envelopes contained typewritten or computer-written textual messages inside in addition to the unknown powdered substance.

g.      The size, font, border, and style of the text contained in the messages in all five envelopes also appear similar in several aspects. The messages are generally printed on one piece of paper and taped to another piece of paper. The messages also appear to have a distinct pattern linking them together in that across all five messages, at several points, the ink used to print the messages is lighter in color than others surrounding it. This leads me to conclude that there may be a technical issue with the device that printed the messages, and that they all originated from the same machine.

h.      All five envelopes contained a white powder. At this point, testing

8

has determined the powder in each envelope to be nonhazardous.

### *PROBABLE CAUSE TO BELIEVE THAT DANIEL FRISIELLO COMMITTED THESE CRIMES*

14.    On February 15, 2018, investigators conducted multiple open-source Internet search queries relating to the different victims involved in this case. A Twitter username, "@mldauber," was identified as being associated with Professor Dauber of Stanford University. The publicly-viewable Twitter feed of that account included a post presumably made by Professor Dauber on February 5, 2018. The post stated, "Professor Dauber's Mailbag: this is an apparent rape threat/glitter bomb. Creative." Attached to the post was an image of what appeared to a letter printed on an 8.5" by 11" piece of paper with glitter stuck to the lower portion of the paper. Printed on that paper was the following text:

> Michele Dauber,
>
> Since you are going to disrobe Persky, I am going to treat you like "Emily Doe". Let's see what kind of sentencing I get for being a rich white male.
>
> ShipYourEnemiesGlitter.com

Sending an individual a "glitter bomb" is a phenomenon in which someone sends an unsuspecting individual a letter or cardboard mailing tube that, when opened, is revealed to contain glitter that typically spills out and gets onto the individual's clothes and personal effects. It is a common prank that people play and is readily viewable on youtube.com and social media. This letter was significant because the text of the glitter bomb letter sent to Professor Dauber matched the text of the white-powder letter sent to Professor Dauber in Envelope 3.

15.    Text at the bottom of the glitter bomb letter suggested that it was a product of www.shipyourenemiesglitter.com, a publicly-viewable business website that sold several

products. One of the products offered for sale was named "The OG Glitter Bomb." The website described this as: "Pay us money, provide an address anywhere in the world & we'll send your recipient so much glitter in an envelope that they'll be finding it everywhere for weeks. We'll also include a note telling the person exactly why they're receiving this terrible gift. Hint: the glitter will be mixed in with the note thus increasing maximum spillage." The cost was $9.99, with an option to purchase an additional personal message that the user could type themselves for an additional $0.99, totaling $10.98. The product was sold as a novelty or practical joke. The business's terms of service stated that the sending of a glitter bomb should not be used "to threaten, constitute harassment, violate a legal restraint, or any other unlawful purpose."

16.    On February 16, 2018, investigators telephonically contacted the owner of shipyourenemiesglitter.com. The person who identified himself as the business's owner was aware of the glitter bomb letter that his company had sent to Professor Dauber on or around February 5, 2018. The owner stated that at the time it was sent, he did not know who Dauber was, nor did he understand the meaning of the message sent to her. The owner, who was remorseful for the letter Professor Dauber received, also stated emphatically that he never intended for his company to be used to send threatening, harassing, or sexual messages.

17.    After reviewing company records, the owner telephonically advised investigators that the person who had ordered this glitter bomb was named Daniel Frisiello. The owner also said that payment for Frisiello's order had been processed by a company called Stripe, and that the transaction ID for Frisiello's payment for the glitter bomb sent to Professor Dauber was ch_1BpQn4FgtgKDhTBiOGWEu5Xd.

18.    The owner also told law enforcement that Frisiello had attempted to use his

10

company to send over ten additional glitter bombs to other people, including members of President Trump's family. The owner knew some of these additional letters were intended to be sent to members of President Trump's family because the names were all associated with President Trump. The owner did not fulfill these additional order requests because the messages appeared to be inappropriate and/or threatening.

19. On February 16, 2018, law enforcement sent legal process to Stripe.com requesting information related to the transaction ID referred to above. On February 19, 2018, Stripe.com responded with the information summarized below:

| | |
|---|---|
| Charge ID: | ch_1BpQn4FgtgKDhTBiOGWEu5Xd |
| Merchant: | Brouhaha LLC |
| | (http://shipyourenemiesglitter.com) |
| Date/Time: | 2018-01-29T00:46:30.623Z |
| Status: | Approved |
| Amount: | $10.98 |
| Issuing Bank: | TD Bank, National Association |
| Redacted Card Number: | 4792XXXXXXXXXXXXXXXX5510 |
| Name Provided: | Daniel Frisiello |
| Zip Provided: | 01915 |
| Customer IP Address: | 73.234.124.104 |

20. According to RMV records and queries of databases available to law enforcement investigators, Frisiello is a 24-year-old male who lives with his family in Beverly, Massachusetts. A person who appeared to be Daniel Frisiello was observed (through pole camera footage) departing and/or returning to the Frisiello residence on every day since February 17, 2018.

21. Based on my training and experience, I am aware that a letter posted with the United States Postal Service in Beverly would bear a postmark and cancellation stamp in Boston.

### *The Dfrisiello Facebook Account*

22. In addition, law enforcement identified a publicly-viewable Facebook page with a

11

vanity ID of dfrisiello and user ID 1066993434, hereinafter "dfrisiello Facebook Account."

23.     There is probable cause to believe that the dfrisiello Facebook Account is Daniel

Frisiello's.  The account's vanity ID consists of the first letter of Frisiello's first name followed

by his entire last name.  At this point in the investigation, investigators believe (through open-

source records and other information) that Daniel Frisiello is the only occupant of the Frisiello

residence with a first name whose first initial is "D."  The account's profile picture is an image

of a white male who appears to be the same person depicted in Frisiello's Massachusetts

Registry of Motor Vehicles photograph.  The dfrisiello Facebook Account's "Intro" section

states that the account-holder lives in Beverly, Massachusetts.

24.     Moreover, some of the dfrisiello Facebook Account's publicly-viewable posts,

comments, likes, and other information relate to recipients, intended recipients, or subject

matters of the letters sent above.

25.     As mentioned above, Envelope 1 was sent to Donald Trump, Jr.  On February 12,

2018, the dfrisiello Facebook Account shared a post by ABC World News Tonight with David

Muir, which detailed a breaking news incident regarding the white powder letter sent to Donald

Trump, Jr.  That story was posted on February 12, 2018 at 1:12 PM.  The drfisiello Facebook

Account shared the story approximately 20 minutes later, at 1:32 PM on the same day.

26.     As mentioned above, Envelope 2 was sent to the U.S. Attorney's Office for the

Central District of California and referred to Mark Salling.  On January 30, 2018 at 1:12 PM, the

drfisiello Facebook Account posted a story entitled "Mark Salling Dead in Apparent Suicide at

35 (Report)."  The comment posted with the story read: "What the…. Not again!"

27.     As mentioned above, Envelope 4 related to Senator Deborah Stabenow's reported

statement concerning Dr. Larry Nassar. On February 8, 2018 at 9:42 PM, the dfrisiello Facebook Account posted a story from ESPN.com entitled "Senator: Give me 'five minutes' with Nassar." The story concerned Senator Stabenow's statements that she would have liked five minutes in a room with Larry Nassar. The dfrisiello Facebook Account posted the following comment above the posted story: "Good god now the democrats are going of the rails. This is not the democratic means and i am embarrassed to be in part of the same party as her, because i am not her. I would be offended if anyone i know in the democratic party has the dame feelings and thoughts of this imbecile of a senator!"

28.     As mentioned, Envelope 5 included a message saying "I am surprised that that olive skin mouth isn't orange." On February 3, 2018 at 1:28 PM, the dfrisiello Facebook Account shared a meme that contains a photo of Congressman Devin Nunes with an orange mouth that was captioned "MONICA LEWINSKY HAS NOTHING ON DEVIN NUNES." And on February 5, 2018 at 11:27 PM, the dfrisiello Facebook Account shared a meme of a post by Donald Trump Is Not My President, which appears to be a picture of Sean Hannity speaking with an orange mouth and the caption "I LOVE YOU DONALD!" on the photo. The dfrisiello Facebook Account commented by writing: "You know you really can see that on the Hannity Report!"

### *IP Address Evidence*

29.     On February 20, 2018, law enforcement queried publicly-available Internet search tools for IP address 73.234.124.104, which was the IP address of the customer who ordered the glitter bomb sent to Professor Dauber. The IP address resolved back to Comcast Cable Communications, LLC. A search using publicly-available Internet geolocation tools identified

13

the possible location of the computer that used that IP address as Beverly, Massachusetts.

30.     On February 20, 2018, investigators contacted Comcast regarding the account-holder who had leased this IP address at the time of the glitter bomb order. The following are the relevant details from Comcast's response:

<div style="margin-left: 2em;">
Account Name:          SXXXXXX Frisiello<br>
Service Address:       XX XXXXXX XXX<br>
                       Beverly, MA 01915
</div>

Comcast also relayed that this IP address had been leased by the above-identified account-holder between approximately January 28, 2018 and February 9, 2018, dates that encompass the period during which the glitter bomb was ordered. The service address matched the address of the Frisiello residence.

31.     Multiple queries of open-source Internet websites and publicly-available paid search tools have identified SXXXXXX Frisiello as a relative of Daniel Frisiello.

### *Payment Evidence*

32.     Investigators also contacted TD Bank, NA, whom Stripe.com had identified as the issuing bank of the card used to purchase the glitter bomb online. TD Bank identified the card (ending in -5510) as a debit card ("the Frisiello debit card") linked to a checking account with the following account details:

<div style="margin-left: 2em;">
Card Holder:           Daniel Frisiello<br>
Address:               XX XXXXXX XXX<br>
                       Beverly, MA 01915<br>
Card Number:           4792 XXXX XXXX 5510
</div>

The address matched the address of the Frisiello residence.

33.     On February 16, 2018, four separate credits to the account were processed, each in the amount of $10.98 and listing "VISA RETURN SYEGLITTER" in the description portion

14

of the statement.  On February 17, 2018, an additional six separate credits to the account were
processed, each in the amount of $10.98 and listing "VISA RETURN SYEGLITTER" in the
description portion of the statement.  These apparent returns of funds are consistent with the
report that Frisiello may have attempted to send other glitter bombs to members of President
Donald Trump's family, but which the company reportedly refused to send, as detailed above.

*CVS Evidence*

34.     The Frisiello debit card was linked to a February 16, 2018 charge for $5.42 that
records listed as "DDA PURCHASE CVS/PHARM 00915--53 DO."

35.     CVS operates a chain of pharmacies.  Investigators in this case contacted CVS's
loss prevention personnel and learned that CVS store number 00915 (the first number cited in the
charge description identified in the prior paragraph) is located at XX XXXXX XXXX, Beverly,
Massachusetts.

36.     CVS tracks individual purchases associated with a CVS rewards card scanned
during the retail transaction.  The following are relevant transactions about which investigators
received information from CVS loss prevention personnel in relation to the rewards card used in
the February 16, 2018 transaction described above:

        a.     On January 15, 2018, a purchase was made of an 8.5" by 11" white
        bubble mailing envelope, two greeting cards, and a 10.5" by 15" bubble mailing
        envelope.  The CVS video surveillance footage from the transaction showed that a
        person who appears to be Daniel Frisiello made the purchase.  As noted herein,
        the white-powder threats were sent in envelopes that appear to have been
        designed to send greeting cards.  The envelopes in the video appear to be light-

15

colored, not red, but the camera angle and lighting do not allow me to determine whether they were yellow or white.

      b.      On February 4, 2018, a purchase was made of $10.00 worth of U.S. Mail Forever stamps.  The CVS video surveillance footage from the transaction showed that a person who appears to be Daniel Frisiello made the purchase.  On February 23, 2018, I visited the Beverly CVS store identified above, and confirmed that the stamps being sold there as of that morning appear to be the same style of stamps that had been affixed to each of the white-powder letters under investigation.  The following is a picture of the stamps sold at the Beverly CVS:



These stamps appear to be the same design as the stamps found on Envelopes 1 through 5.  Although these stamps are commonly-available at a number of locations other than the Beverly CVS, their likely purchase by Frisiello is significant in context with all of the other evidence implicating Frisiello.

***Trash Evidence***

37.     On the evening of February 21, 2018, and the morning of February 22, 2018,
investigators conducting surveillance of the Frisiello residence observed multiple individuals
bringing trash and recycling out of the residence and down to the street for collection. At
approximately 8:20 AM, investigators surreptitiously collected the trash and recycling, which
had been placed on the public street by Frisiello and other household members. Investigators
then took the trash and recycling to an offsite law-enforcement facility and reviewed it for
potential evidence.

38.     One of the items recovered was an 8.5" by 11" piece of paper with typewritten or
computer-written text in the upper half of the page. A redacted picture of that paper appears on
the following page of this affidavit:

17



An alt right Hollywood actor running for congress.

Deborah Stabenow

Imbecilic senator who approved how Musgrave handle the situation and wanted it to happen.

The paper was missing the upper-left corner and a large portion of the upper-right part of the page. The edges appeared to have been cut cleanly, presumably by scissors or another sharp implement. The following text was visible:

| (cut-out portion) | An alt right Hollywood actor running for congress. |
| Deborah Stabenow XXXXXXXXXXXX East Lansing, MI 48823 | Imbecilic senator who approved how Musgrave handle the situation and wanted it to happen |

Each of the above text blocks was bordered by a rectangular solid black line. Based on my training and experience, this paper appears similar to a printout of what a computer user would see if, for example, the user had entered text into a Microsoft Excel workbook or a table in a Microsoft Word document and then created a border around the text.

39.    The Deborah Stabenow address block on the above piece of paper contains the same text as appeared handwritten on Envelope 4, as described above. The text block adjacent to it also discusses "Musgrave," which, in context, I interpret to be a typographic error that was meant to be "Margraves," as mentioned in the white-powder letter to Senator Stabenow: "If you condone Margraves reaction to his daughter's testimony on Dr. Nassar, you are no better than he is. You deserve what is coming to you [. . .]"

40.    Taken in context, the text block that says ". . . Hollywood actor running for congress" appears to be a reference to Antonio Sabato, Jr. and his current California congressional run. In context, it is more likely than not that the cut-out portion in the upper-left corner of the paper would have contained the name and address of a mailing directed at Antonio Sabato, Jr. Those pieces of paper will undergo a forensic comparison. In reviewing the

19

photographs of Envelope 5, the Antonio Sabato Jr. mailing, investigators have made several plain view non-scientific observations:

      a.     This is a redacted picture of Envelope 5:



      b.     It bore a typewritten or computer-written address on a white piece of paper that was affixed to the red envelope with a large piece of clear tape. A portion of the left side of the address label appears to have a solid black line going vertically along the lines of the address, similar in style, width, and color to the lines printed on the piece of paper recovered from the Frisiello residence's trash and recycling.

c.    The bottom portion of the white address label on the envelope appears to have been cut on a slight angle with the left side of the paper being larger than the right.  In comparison, the missing portion of the paper depicted above was cut at what appears to be the same angle.

41.    These observations lead me and other investigators to conclude that it is more likely than not that the address label attached to Envelope 5 was cut from the piece of paper depicted above.

42.    A second item recovered from the Frisiello residence's trash and recycling was a CVS store receipt dated February 4, 2018, as described above.  The item purchased in the transaction was listed as "FOREVER STAMPS" costing $10.00.  The payment method for the transaction was a debit card ending in -5510, leading investigators to believe that stamps had been purchased by the Frisiello debit card.

43.    A third item recovered from the Frisiello residence's trash and recycling was a Shaw's grocery store receipt dated February 9, 2018.  It listed the purchase of one item entitled "TAPE INVISIBLE" for $1.29.  The payment method for the transaction was a debit card ending in -5510, leading investigators to believe that it had been purchased by the Frisiello debit card.

44.    Although tape is a common household item the purchase of which is typically unremarkable, clear packing-style tape affixed the addresses to some of the white-powder envelopes described above.  Clear tape also affixed the messages inside, which were generally printed on one piece of paper and taped to another piece of paper.

### *CONCLUSION*

45.    Based on all the foregoing, there is probable cause to believe that Daniel Frisiello

21

mailed the white-powder envelopes under investigation and thereby violated 18 U.S.C. §§ 876(c)

(mailing threat to injure the person of another), and 1038 (false information and hoaxes,

punishing "[w]hoever engages in any conduct with intent to convey false or misleading

information under circumstances where such information may reasonably be believed and where

such information indicates that an activity has taken, is taking, or will take place that would

constitute a violation of chapter . . . 10 [biological weapons], 11B [chemical weapons], . . .").

Respectfully submitted,

Michael J. Connelly
Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me on _____**Feb 28, 2018**_____
                                                    Date

DAVID H. HENNESSY
Chief United States Magistrate Judge

22